UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**CRYSTAL FIDUCIA,**

                           **Plaintiff,**

               **-v-**                                   **1:13-CV-285**

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Office of Peter M. Margolius
Peter M. Margolius, Esq.
7 Howard Street
Catskill, NY 12414
Attorney for Plaintiff

Sergei Aden, Esq.
Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In June 2008, plaintiff filed applications for disability insurance benefits and supplemental security income ("SSI"), claiming disability beginning January 16, 2008. Plaintiff claimed that she suffered from post traumatic stress syndrome and acute depression. The applications were initially denied on September 9, 2008. Thereafter, plaintiff filed a written request for a hearing, and a hearing was held on December 22, 2009 before Administrative Law Judge ("ALJ")

Michelle Marcus. On January 29, 2010, the ALJ issued a decision denying plaintiff's claim for benefits. (Tr. 10-21). The Appeals Council denied plaintiff's request for review. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for disability benefits. Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13). For the reasons set forth below, the court concludes that the Commissioner's decision should be affirmed and plaintiff's complaint dismissed.

## DISCUSSION

### A. Legal Standard

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

The ALJ found that plaintiff has not engaged in substantial gainful activity since the application date. (Tr. 15). The ALJ further found that plaintiff's major depression, personality disorder, post traumatic stress disorder, and anxiety with panic attacks were severe impairments. (Tr. 15-16). The ALJ then considered whether plaintiff's impairments met the severity of the listed impairments. (Tr. 16-17). Explicitly considering listing 12.04, the ALJ concluded that plaintiff's impairments did not meet the requirements of the listing. (Tr. 16-17).

The ALJ next found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations. (Tr. 17). More specifically, the ALJ found that "due to moderate concentration and social limitations resulting from depressive and anxiety symptoms, the claimant may have difficulty with detailed or complex tasks and frequent or constant contact with others . . . ." (Id.). The ALJ further concluded that "the evidence supports that she can perform unskilled work that does not require more than occasional interaction with the public and co-workers." (Id.).

The ALJ discussed plaintiff's therapy treatment records[1], observing that they consistently find flat affect but neutral mood and logical and organized thought processes. The ALJ discussed a medical source statement completed by Dr. Wasfi and Ms. Graham, which found marked limitations in plaintiff's ability to interact appropriately with supervisors, coworkers, and the public as a result of her low frustration tolerance when dealing with the public and anger. (Tr. 18). The medical source statement also found marked limitations in understanding, remembering and carrying out complex instructions. The ALJ determined that these assessments were entitled to "great weight" as they were "essentially consistent with all the evidence in the medical record." The ALJ also considered the opinion of the state agency consultant, but only gave the opinion "some weight," observing that Dr. Hameed did not personally examine plaintiff.

The ALJ also observed that plaintiff cares for her son, at the time almost two years old, who was diagnosed with hyperinsulinism and required a blood test every four hours. Additionally, she previously worked as a cashier,[2] and, beginning in the spring 2009, and for the next three semesters was enrolled in classes at Columbia Community College. The ALJ also noted that plaintiff was able to shop, do laundry, and drive daily. The ALJ credited plaintiff's testimony regarding her depression, anxiety, and panic attacks, but noted that she was able to

---

[1] The court notes for clarity, that the records from Greene County Mental Health consist of notes by a nurse practitioner, Maggie Graham, who prescribed plaintiff medications, and those of Sarah Delavan, a therapist. Anise Wasfi, M.D. completed a medical source statement with Ms. Graham, and his signature also appears on the treatment notes of Sarah Delavan.

[2] The Court further notes that although at times plaintiff appears to claim that she could not keep working at this job because of her disability, she also asserts that the reason she left was her pregnancy, and her son's health issues. (*See, e.g.,* Tr. 136 (explaining that she stopped working because she "was 8 months pregnant and having difficulty"); Tr. 147 ("I am out of work because of the baby's condition."); Tr. 39 ("I stopped working because I was pregnant at the time and I was dilating early, so the doctors kind of pulled me out.")).

either talk herself out of the panic attacks or wait them out in the restroom. (Tr. 18). The ALJ further observed that plaintiff alleged disability commencing in January 2008, but did not seek psychiatric treatment until July 2008.

Next the ALJ found that plaintiff lacked past relevant work experience as her earnings were less than the substantial gainful activity level, but that she retained the RFC for work at all exertional levels with additional non-exertional limitations. The ALJ then used the Medical Vocational Guidelines to determine, based on plaintiff's age and education that she was not disabled.

**C.     RFC Determination**

Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence. (Dkt. No. 12 at 1). This is the only issue presented by the plaintiff for the Court to consider.[3]

---

[3] Although plaintiff claims only that the ALJ's RFC determination is not supported by substantial evidence, her argument focuses on the opinion of "treating mental health specialist Anise Wasfi, M.D." The majority of plaintiff's brief argues that this opinion does not support the ALJ's RFC determination, not that the weight given to the opinion was improper. However, at the end of her brief, plaintiff states, for the first time, that "Dr. Wasfi's opinion should be given controlling weight," apparently contending that the ALJ did not appropriately weigh the treating physician's opinion. Although this does not appear to be plaintiff's argument throughout her brief, the court has considered whether the ALJ appropriately weighed this opinion and finds that she did.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). An ALJ may refuse to consider the treating physician's opinion controlling only if he is able to set forth good reason for doing so. *Barnett v. Apfel*, 13 F. Supp. 2d 312, 316 (N.D.N.Y. 1998). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." *Peralta v. Barnhart*, 2005 WL 1527669, at *10 (E.D.N.Y. 2005) (remanding where the ALJ failed to explain the weight, if any, assigned to the treating physician's opinions). The regulations provide a number of factors for the ALJ to consider. 20 C.F.R. § 404.1527(d)(2).

As an initial matter, the assessment was signed by both Dr. Wasfi and plaintiff's treating nurse practitioner, Maggie Graham. Ms. Graham provided medication management for plaintiff, and appears to have treated her once or twice per month during the relevant period. During this time, plaintiff was also

-5-

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

It is plaintiff's contention that the ALJ erred by not finding that plaintiff was unable to work due to the findings in the Medical Source Statement completed by Ms. Graham and Dr. Wasfi on March 24, 2009. (Tr. 231-33). In this assessment, plaintiff was found to have moderate limitations with respect to simple instructions, and moderate-marked limitations with respect to complex instructions and decisions. (Tr. 231). Plaintiff was further found to have marked limitations with respect to interacting appropriately with the public, with supervisors, and with co-workers. (Tr. 232). This form defines moderate restrictions as "more than a slight limitation

---

treated by a therapist, Sarah Delavan. The treatment records from Sarah Delavan contain Dr. Wasfi's signature. When asked who treats her for mental health, plaintiff stated only Sarah Delavan and Maggie Graham. (Tr. 46). It is unclear whether, under these circumstances, Dr. Wasfi would even be considered a treating physician under the regulations. Similarly, although Ms. Graham is clearly a treating source, as a nurse practitioner, she is not an "acceptable medical source" under the regulations and her opinion would not be entitled to controlling weight. *See* Social Security Ruling 06-3p. However, even assuming that this assessment was completed by a treating physician, the court finds that the ALJ appropriately considered the opinion in accordance with the factors in 20 C.F.R. § 404.1527(d)(2) and did not err in giving the opinion great weight instead of "controlling weight." The ALJ did not explicitly mention each of these factors, but she did cite to 20 C.F.R. § 404.1527(d)(2) when discussing the weight assigned to the various opinions.

in this area, but the individual can generally function well;" marked restrictions as "a serious limitation in this area[; t]here is a substantial loss in the ability to effectively function;" and extreme limitations as "a major limitation in this area[; t]here is no useful ability to function in this area."  In essence, plaintiff argues that she should have been found disabled because Dr. Wasfi and Ms. Graham's assessment was arguably more restrictive than the ALJ's RFC determination which found moderate social limitations as opposed to the marked limitations identified in the medical source statement.

The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  Social Security Ruling 85-15.  The ALJ clearly considered the assessment of Dr. Wasfi and Ms. Graham, and the other evidence in the record relating to plaintiff's frustration when interacting with others when she concluded that plaintiff could perform unskilled work with additional exertional limitations.[4]  As an initial matter, the court notes that the ALJ is not required to adopt the healthcare provider's opinion in its entirety.  The ALJ was free to rely upon the assessment, and assign it great weight, without adopting it in its entirety.  *Jones v. Colvin*, No. 1:13-CV-1214 (DNH/CFH), 2014 WL 3728939, at *5-6 (N.D.N.Y. July 25, 2014) ("The ALJ is free to rely upon portions of a medical opinion that are 'internally consistent and well-supported by the objective medical evidence' and may reject portions that are

---

[4] The court notes that the record contains an assessment completed in July 2008 by Ms. Graham which states that plaintiff is able to follow simple instructions and can accept some constructive criticism and is neat and clean in appearance but struggles to work with others in a work setting and has poor frustration tolerance for co-workers.  (Tr. 205).  These limitations were clearly considered, and included in the ALJ's RFC determination.

contradicted by the doctor's own observations.") (citations omitted).

Moreover, the assessment completed by Dr. Wasfi and Ms. Graham did not find extreme limitations in any category which would have meant that they believed plaintiff had "no useful ability to function in this area." Instead, the assessment found that plaintiff had a marked limitation with respect to interacting with others–that she had a "substantial loss in the ability to effectively function." Significantly, the ALJ did not find that plaintiff would be able to return to work in a position like a cashier, instead identifying non-exertional limitations, finding that she can perform unskilled work "that does not require more than occasional interaction with the public and co-workers."[5] (Tr. 17). The fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers. Even if plaintiff were found to have extreme limitations, and to be unable to work by her healthcare providers, this determination would not be controlling. *See Batko v. Comm'r of Soc. Sec.*, No. 1:13-CV-373 (GLS/ESH), 2014 WL 4973158, at *5 (N.D.N.Y. Sept. 30, 2014) ("The opinion of a treating physician, or any doctor, that a claimant is 'disabled' or 'unable to work' is not controlling. It is the Commissioner who is 'responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability.'") (citing 20 C.F.R. 404.1527(d)(1)); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("The 'ultimate finding of whether a claimant is disabled and cannot

---

[5] Plaintiff herself seems to believe that interaction with others is the main issue with the jobs that she had in the past. (*See, e.g.,* Tr. 51 (discussing the problems that she had at a job at McDonald's as "[t]he co-workers, I just didn't get along with them and the customers, I just didn't get along with them."); Tr. 42 (discussing her job at the grocery store: "Well I had a lot of panic attacks. I would get in fights with the customers and the co-workers. I just didn't like being around people.")).

-8-

work . . . [is] reserved to the Commissioner.'") (internal quotation marks and citation omitted).

The remaining evidence in the record also supports the ALJ's determination that plaintiff can occasionally interact with others. Although alleging an onset date of January 16, 2008, plaintiff's impairments date back years,[6] and the record includes mental health treatment records dating back to 2007, a time when plaintiff was employed as a cashier. During these visits in 2007, plaintiff spoke of many of the same issues she complains of after the alleged onset date, for example, moodiness, tearful episodes, anger, and panic attacks. (*See, e.g.*, Tr. 307-08, 305-06, 304, 301-02, 285, 300). Similarly, the observations of the mental health providers are similar to those after the alleged onset date. The providers find, generally, that she has poor eye contact, but she is alert and oriented, cognition is intact. (*See, e.g., id.*). During these visits, plaintiff complained of anger flare-ups at work, and being intolerant of customers. (*See* Tr. 299). Plaintiff apparently was able to work as a cashier at a grocery store during this time.[7] This position is not one where contact with others is limited. Indeed, the very nature of the position is interacting with customers nearly constantly.[8] As noted above, plaintiff appears to have left this position not because of her alleged disability, but because of her pregnancy and her son's condition.

After learning that she was pregnant, plaintiff stopped medications in July 2007. During this time, and May 2008 (four months after her alleged onset date) there is a gap in mental health

---

[6] In July 2008, the treatment records indicate that plaintiff's history of mood symptoms date back to middle school, with anger of increased intensity over the last three years. (Tr. 202).

[7] Plaintiff does assert that while she worked at the store, she "had a lot of panic attacks. [She] would get in fights with the customers and the co-workers. [She] just didn't like being around people." (Tr. 42). However, even in this customer-focused position, the "[s]upervisors were pretty understanding" and she was not written up. (*Id.*).

[8] When asked if there were always customers around, plaintiff stated "there were pretty much always customers . . . ." (Tr. 45).

-9-

treatment records. In May 2008, the treatment notes of her therapist note that she is unemployed so that she can take care of her son, and refers her to Ms. Graham for medication management. (Tr. 238). During these visits in 2008 and 2009, as with those in 2007, plaintiff generally made little eye contact, but was alert and oriented, cognition was intact, and thoughts were logical, organized, reality based, and insight was fair. (*See, e.g.,* Tr. 297-98, 244-45, 243, 203). In August and September 2008, the treatment records state that plaintiff has decreased tearful episodes and that her mood appears to have improved since beginning Zoloft on July 31st. (Tr. 243, 237, 246). In June 2009, the notes reflect that her depression is lifting. (Tr. 255). By October 2009, her anxiety had decreased to 5 and her depression to 4-5 on a 10 point scale. (Tr. 290).

Despite her depression and anxiety, and her need to check her baby's blood sugar every four hours, plaintiff began a part-time schedule of courses at Columbia Community College in the spring of 2009. She continued in the summer of 2009, and in the fall of 2009. The treatment records during her first semester note plaintiff's concern about looking stupid if she is called on in class, and that she experiences "tremendous performance anxiety when she has to present in front of class," but was doing well grade-wise. (Tr. 242, 240-41). However, later in the semester, plaintiff told Ms. Graham that she had an oral presentation in front of the class and was not "so concerned as she might have been in the past." (Tr. 258). Although plaintiff reported increased anxiety in her school environment, she was able to talk herself out of having panic attacks. (Tr. 290). Plaintiff maintained an above-average GPA; at the end of these three semesters, her cumulative GPA was 3.22. These activities that plaintiff successfully completed are beyond the expectations of an unskilled job with only occasional interaction with others.

Plaintiff's own testimony and activities demonstrate that her limitations in interacting with others and with complex tasks–whether marked or moderate–would not prevent her from any type of work. To the extent the ALJ's RFC finding is less restrictive than Dr. Wasfi's opinion, the ALJ's determination is supported by substantial evidence. The RFC determination is supported by and generally consistent with the assessment of Dr. Wasfi and Ms. Graham, and the other evidence of record. This is sufficient to sustain the ALJ's determination under the deferential standard of review.

## CONCLUSION

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is DENIED; and it is further

ORDERED that the Clerk of Court is directed to enter judgment for the Commissioner.

IT IS SO ORDERED.

Date: July 2, 2015
 Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge